The State v. Hirsch.

Filed Sept. 25, 1890.

———— ◆ ————

No. 15,601.

THE STATE v. HIRSCH.

INTOXICATING LIQUOR.—*Sale Upon Day of Primary Election.*—*Section 2098, R. S. 1881, Construed.*—Under section 2098, R. S. 1881, which provides that " Whoever shall sell, barter, or give away to be drunk as a beverage, any spirituous, vinous, malt or other intoxicating liquor * * upon the day of any election in the township, town or city, where the same may be holden, * * shall be fined," etc., it is a crime for a person having a license under the law to sell intoxicating liquors in a less quantity than a quart at a time on the day of a primary election held by a political party to select candidates to be voted for at a general election.

SAME.—*Section 2098, R. S. 1881.*—*Ascertainment of Legislative Intent.*—In construing section 2098, section 2099 of the same act which prohibits druggists and their clerks from selling intoxicating liquors upon the day of any State, county, township, primary or municipal election in the township, town or city where the same is held, is to be considered therewith in ascertaining the legislative intent.

ELLIOTT, J., and COFFEY, J., dissent.

From the Randolph Circuit Court.

*L. T. Michener*, Attorney General, and *J. B. Ross*, for the State.

*F. Winter, J. B. Elam, L. W. Norton* and *J. S. Engle*, for appellee.

OLDS, J.—The defendant was indicted, under section 2098, R. S. 1881, for selling intoxicating liquors at the town of Winchester on the day of a primary election in the town of

Winchester, township of White River, in the county of Randolph and State of Indiana, held by a political party for the election of candidates for various offices to be voted for at the next general election.

The defendant moved to quash the indictment, and the court sustained the motion, and quashed the indictment, to which ruling of the court the State at the time excepted, and prosecutes this appeal, and assigns such ruling as error.

The question involved is whether or not it is a crime for a person having a license under the law to sell intoxicating liquors in a less quantity than a quart at a time on the day of a primary election held by a political party to select by primary election candidates to be voted for at a general election. No objection is made as to the form of the indictment.

Section 2098, R. S. 1881, is as follows: " Whoever shall sell, barter, or give away to be drunk as a beverage, any spirituous, vinous, malt or other intoxicating liquor, upon Sunday, the fourth day of July, the first day of January, the twenty-fifth day of December (commonly called Christmas day), Thanksgiving day as designated by proclamation of the Governor of this State or the President of the United States, * * or any legal holiday ; or upon the day of any election in the township, town, or city where the same may be holden ; or between the hours of eleven o'clock P. M. and five o'clock A. M.,—shall be fined," etc.

This section of the statute makes it a crime to sell, barter or give away, to be drunk as a beverage, intoxicating liquors upon the day of *any election* in the township, town or city. This section, as will be seen, does not designate any particular election, or what elections are included within its provisions, and we are therefore compelled to look beyond the section to determine what is meant by, or what elections are included within, the words *any election.*

It is contended by counsel for appellee that the words mean all legal elections, or all elections authorized or regu-

lated by law, and that we can not look to the other sections of the law to ascertain what was meant by the Legislature in the use of these words.

This theory of construction would give the section a much wider scope than is contended for by counsel for the appellant.

There are many elections authorized and regulated by law upon the day on which they may be held, it is manifest it was not contemplated by this act to prohibit the sale of intoxicating liquors.

The statute (section 4424, R. S. 1881,) provides that the township trustees of the several townships of each county shall meet on the first Monday of June of each year and elect a county superintendent. Such an election is as much an election within the town where the same may be holden as an election for any other county, township, town or city officers, and if we construe the words ".any election" to mean any legal election, or election authorized by law for the election of an officer, or accept the words in their ordinary sense, without looking to the other sections of the same act to ascertain their meaning, it would manifestly include the day fixed by law for the election of a county superintendent, and it would constitute a crime to sell intoxicating liquors upon that day within the township, town or city where such election is holden. But we think it was not intended to prohibit the sale of liquors upon the day of such election, and that the statute will not warrant any such construction.

It is contended that statutes relating to criminal offences must be strictly construed, and that we can only look to the particular section defining the offence to ascertain its meaning; that to constitute a crime the act done must come both within the letter and spirit of the language used. This is true in a limited sense; but giving this section a strict construction, primary elections come within both the letter and spirit of the language used. The word "election" is not

limited in its definition and meaning to the act or process of choosing a person for a public office by a vote of the qualified electors at the time, place and manner prescribed by law.

The Century Dictionary, vol. 2, defines *election* to mean: "A deliberate act of choice ; particularly, a choice of means for accomplishing a given end. The choice of a person or persons for office of any kind by the voting of a body of qualified or authorized electors. The persons voted for are called candidates, or, with reference to their selection as candidates, nominees."

Rapalje and Lawrence's Law Dictionary gives the phrase "primary election," and defines it to be "A popular election held by members of a particular political party, for the purpose of choosing delegates to a convention empowered to nominate candidates for that party to be voted for at an approaching election."

In Worcester's Dictionary the word "election" is defined as "The act of electing or choosing. Power of choosing; free choice ; preference ; selection." The same author defines the word "primary" to mean "First in time ; original ; primitive ; first."

In Webster's Dictionary the word "election" is defined as meaning "The act of choosing ; choice ; the act of selecting one or more from others. The act of choosing a person to fill an office or employment, by any manifestation of preference ; as by ballot, uplifted hands, or *viva voce.*" And the same author defines the word "primary" to mean "First in order of time or development ; original. First in order; preparatory to something higher."

Under our form of government we have a well defined system of choosing or electing officers regulated by law. There exists an equally well defined and unbroken custom on the part of the various political parties to choose or elect candidates of such parties for the various offices prior to the holding of the election at which they shall be voted for, and

the choice made by all the electors of the persons to fill the various offices.

There is chosen first a candidate by the members of each political party for each particular office to be filled, to be voted for at the final election. The respective parties first make choice of candidates, and secondly all of the electors make choice between the various candidates; and the words " primary election " well express the choice made by the respective political parties.

The words " primary election," we may say, are as well understood to mean the act of choosing candidates by the respective political parties to fill the various offices as the word " election " is to mean the final choice of all the electors of the persons to fill such offices. So that the words " any election " clearly include primary elections, and such elections come within the letter of the statute.

The object and purpose of the statute were to prevent elections from being influenced by the use of intoxicating liquors, and to put it beyond the power of any person to secure an election to office by the use or influence of intoxicating liquors. And, as it is the first step to an election to an office by all the electors to be chosen as a candidate of some political party at the primary election held by such party, it is manifestly as important to prohibit the sale of intoxicating liquor on the day of a primary election as upon the day of the final election by all the electors; therefore primary elections manifestly come within the spirit as well as the letter of the law.

Public welfare demands purity in primary elections, at which the candidate is elected, as well as the election at which the officer is chosen to fill the office, and it is but fair to presume that the Legislature intended to remove all improper influences from one as well as the other, and by the use of the words " any election " it was intended to prohibit the sale of intoxicating liquors, both on the day of electing

or choosing the candidates, as well as the day of electing, or choosing the officer.

In the case of *Strasburger* v. *Burk*, decided by the city court of Baltimore (13 Am. Law Reg., p. 607), it was held that the principles of public policy, which make void all contracts tending to the corrupting of elections held under authority of law, apply equally to what are called primary, or nominating, elections. In that case, BROWN, C. J., delivering the opinion of the court, says : " The same principles of public policy, therefore, which apply to elections ordained by law must for the same reasons be applicable to the primary elections. It is equally injurious to the public whether a man sells his influence with the voters at a primary election or at a legal election, and it is equally corrupting to the voters whether they are treated to beer and cigars to influence their votes at a primary election or at a legal election."

In speaking of primary elections the court, in the same case, says : " In fact they have grown to be an essential part of our political system. Imperfect and unsatisfactory and liable to gross abuse as they are, they constitute almost the universal mode by which candidates everywhere are now brought before the people for their suffrages. If they are tainted by fraud or corruption, our political institutions are contaminated at their source."

While, as we have stated, primary elections are, as we believe, fairly within both the letter and spirit of the law, if section 2098 is given a strict construction, without looking to the other portions of the act, yet it is a well recognized rule that in construing any portion of a statute, the sense of the words is to be adopted which best harmonizes with the context, and promotes in the fullest manner the policy and object of the Legislature ; that in construing a statute the whole context is to be considered together, and not construed by parts or sections.

Upon the subject of the construction of statutes, in End-

lich Interpretation of Statutes, section 329, it is said that "The rule which requires that penal and some other statutes shall be construed strictly was more rigorously applied in former times, when the number of capital offences was one hundred and sixty or more; when it was still punishable with death to cut down a cherry tree in an orchard, or to be seen for a month in the company of gipsies. But it has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning, and to promote its object."

Again, in the same authority, section 337, it is said: "The rule of strict construction, however, whenever invoked, comes attended with qualifications and other rules no less important; and it is by the light which each contributes that the meaning must be determined. Among them is the rule that that sense of the words is to be adopted which best harmonizes with the context, and promotes in the fullest manner the policy and object of the Legislature. It is said that words descriptive of an offence or its punishment are not to be bent on the one side or the other. They are to be construed by reference to the subject-matter, and the context, the apparent policy and objects of the Legislature; by the whole context, not by a mere division into sections, so as to give effect to the objects and intent of the whole, as well as by a comparison of statutes *in pari materia,* and consequently, the old law, the mischief and the remedy. The paramount object, in construing penal as well as other statutes, is to ascertain the legislative intent; and the rule of strict construction is not violated by permitting the words to have their full meaning, or the more extensive of two meanings, when best effectuating the intention. They are, indeed, frequently taken not in their strict technical sense, if that would defeat, but in a more popular sense, if that will uphold, and carry out, the in-

tention of the Legislature, but in the widest sense, some-
times even in a sense more wide than etymologically belongs
or is popularly attached to them, in order to carry out ef-
fectually the legislative intent, or, to use Lord COKE's words,
to suppress the mischief and advance the remedy.   Nor is
the rule of strict construction ever violated by permitting
the words of a statute to have their full meaning, or by
the application of common sense to its terms, in order to
avoid an absurdity."   And this rule of construction is well
supported by other authorities.

Keeping closely within the rule, we are furnished an in-
terpretation and construction of the words " any election,"
and are informed what elections the Legislature had in mind,
and upon what days it was intended to prohibit the sale of
intoxicating liquors within the statute of which said section
2098 is a part, for section 2099 prohibits the sale of intoxi-
cating liquors by druggists, or druggists' clerks, on Sunday,
the fourth day of July, first day of January, the twenty-fifth
day of December, Thanksgiving day, or any legal holiday,
or upon the day of any State, county, township, primary, or
municipal election in the township, town, or city, where the
same may be holden.  Thus the Legislature, in the same act,
has defined what elections it is intended the law shall apply
to.   There is a little difference in the phraseology of the two
sections, but it is manifest, when we construe them together,
that they were intended to apply to the same days, and pro-
hibit the sale of intoxicating liquors by all persons on those
days.   In section 2099, in fixing the days, Thanksgiving day
is named, without designating by what authority it shall be
proclaimed;  in section 2098 there are used the words
" Thanksgiving day, as designated by proclamation of the
Governor of this State, or the President of the United
States."

It is manifest that Thanksgiving day as used in section
2099 includes only such days as are proclaimed as such by
the Governor of this State or the President of the United

States. To hold that the Legislature intended to prohibit druggists and their clerks from selling intoxicating liquors on the days when primary elections are held within a township, town or city, and to allow all others who have license to sell upon those days, would be an absurdity. When we look to the whole act to determine what the Legislature intended we find a well regulated system in regard to the sale of intoxicating liquor whereby the sale of it is prohibited by all persons on certain days, viz., Sunday, the fourth day of July, the first day of January, the twenty-fifth day of December, Thanksgiving day as designated by proclamation of the Governor of this State or the President of the United States, or any legal holiday, or upon the day of any State, county, township, primary or municipal election, in the township, town or city where the same is holden. Such, we think, is clearly the interpretation which should be given to the statute. The words " primary election " are well understood as applying to such an election as that described in the indictment in this case, an election held by the qualified voters of a political party to nominate or elect candidates for various offices. We have no other election to which those words apply, except the election held by political parties to nominate and elect candidates. To hold that the act does not apply to those elections is to hold that the Legislature used the words when there were no elections to which they could apply, and it is well said in the case of *Strasburger* v. *Burk, supra,* that " they have grown to be an essential part of our political system," which is a matter of common information of which courts will take judicial knowledge.

The Legislature of 1889 passed an act making it a crime to hire or use money or other means to influence voters at primary elections of any political party. Elliott's Supp., section 1396. We refer to this to show that it is a recognized term for elections held by political parties to nominate candidates.

It follows from the conclusion we have reached that the court erred in sustaining the motion to quash the indictment.

Judgment reversed, with instructions to overrule the motion to quash the indictment.

Filed June 24, 1890; petition for a rehearing overruled Sept. 25, 1890.

### DISSENTING OPINION.

ELLIOTT, J.—I think that the omission of the word " primary " in the section of the statute upon which the indictment is based is one that the courts can not supply, and that in the absence of that word the statute refers to ordinary elections, that is, elections held under the law, and for the choice of officers.

COFFEY, J., concurs with ELLIOTT, J.

Filed June 24, 1890.