ATTORNEY GENERAL, *ex rel.* LODGE, *v.* BRYAN.

CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS — COUNTY BOARD OF SUPERVISORS — WYANDOTTE CHARTER — ELECTION OR APPOINTMENT—CITIES.

> Under the charter of the city of Wyandotte, framed pursuant to Act No. 279, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 5442 *et seq.*), and requiring the city commission to select supervisors of election who should serve with the assessor on the board of supervisors, the appointment by the commission was constitutional and valid: it is not essential that the supervisors should be elected in order to comply with the home rule law and with the Constitution, art. viii, §§ 7, 18, since the people of the city, by adopting a charter that provided for such appointment, made choice of its method of selecting the representative on the board. The townships in the county could have no voice in the matter by whichever method the supervisor should be designated.

Quo warranto by Grant Fellows, attorney general of the State of Michigan, on the relation of John C. Lodge, against Edward C. Bryan, Theodore Megges, George McTaggert and Louis Pernot, to determine the title of respondents to the office of supervisors of the

county of Wayne. Submitted June 15, 1914. (Docket No. 122.) Decided July 24, 1914.

*Grant Fellows,* Attorney General, *Allan H. Frazer,* Prosecuting Attorney, and *Paul W. Voorhies,* Assistant Prosecuting Attorney, for relator.

*George W. Coomer (Thomas A. E. Weadock,* of counsel), for respondents.

BIRD, J. The constitutional right of the respondents to represent the city of Wyandotte on the board of supervisors, is questioned by quo warranto proceedings, instituted in this court by the attorney general, on the relation of John C. Lodge, chairman of said board. Prior to the 2d day of March, 1911, when the people of Wyandotte voted to adopt a new charter, the city was incorporated under the Public Acts of 1895 as a fourth-class city. Act No. 215, Pub. Acts 1895 (2 How. Stat. [2d Ed.] § 5478). It was divided into four wards, and elected four supervisors, who represented the city on the board. On the 4th day of March, 1911, the new charter became effective. Section 19 of chapter 5 of the new charter provides for representation of the city upon the board of supervisors in the following manner:

"On the 3d Monday of April, A. D. 1911, and on the 3d Monday of April in each year thereafter, there shall be appointed by majority vote of the city commission the following officers: A city assessor who shall be *ex officio* supervisor of elections in the voting precinct in which he resides, and a supervisor of elections for each voting precinct, except that in which the assessor resides. The city assessor and such of the other supervisors of elections as the city commission may designate shall represent the city on the board of supervisors of Wayne county.

"The supervisor of elections shall perform all duties imposed by the general laws of the State on supervisors of townships, except those duties relating to

the assessment and levy of taxes, and such duties as are by this charter imposed on other officers."

In pursuance of this provision, a city assessor and three supervisors of election were appointed by the commission. These appointments fell to the respondents, and later they were appointed to represent the city on the board of supervisors, and they are now acting in such capacity. The question raised by relator against the right of respondents to seats in that body is that—

"The board of supervisors is distinctly the legislative body of the county, and is clothed with the power of determining, among other things, the amount of money to be raised by taxes, and to apportion the same among the various cities and townships of said county. Such a body, under the implied provisions of the Constitution, must be composed of members elected directly by the electors, and not appointed."

The provisions of the Constitution which appear to throw some light on the controversy, are the following:

"A board of supervisors, consisting of one from each organized township, shall be established in each county, with such powers as shall be prescribed by law." Article 10, § 6, Const. 1850.

"There shall be elected annually on the first Monday of April, in each organized township one supervisor, * * * whose powers and duties shall be prescribed by law." Article 8, § 18, Const. 1909.

"Cities shall have such representation in the board of supervisors of the counties in which they are situated as" the legislature may direct. Article 10, § 7, Const. 1850.

In the Constitution of 1909, sections 6 and 7 of article 10 are consolidated without change as section 7 of article 8. It is reasonably clear from the first two sections quoted that the legislature has no power to say what representation a township shall have upon the board, nor has it any power to prescribe how its representative shall be elected. Section 7, however,

imposes the duty on the legislature to specify what representation cities shall have upon the board. This duty has been discharged with reference to new charters, by the passage of section 27 of Act No. 279 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 5442 *et seq.*), which provides that:

"Each city, except as is otherwise provided by law, shall have at least one representative on the board of supervisors of the county. The present representation of cities now organized on such boards of supervisors shall remain as now fixed, until changed according to law, but no city shall have power to increase its representation on such board of supervisors."

The legislature has done more than to provide what representation cities shall have; it has provided in subdivisions (*a*) and (*b*) of section 3, Act No. 279 of the Public Acts of 1909, that such representation should be *"elected or appointed."* I do not understand that the relator questions the right of the legislature to provide what representation the city shall have, but he denies the right of the legislature to say that such representation shall be appointed. The argument of relator relies for support upon a class of cases wherein it is held that it is not competent for the legislature to delegate the taxing power for local purposes to municipal boards whose members are agents of the State, or whose members are not answerable directly to the people they are to represent. *Board of Park Commissioners* v. *Detroit Common Council*, 28 Mich. 228 (15 Am. Rep. 202); *Vallelly* v. *Board of Park Com'rs*, 16 N. D. 25 (111 N. W. 615); *State* v. *Mayor of Des Moines*, 103 Iowa, 76 (72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157); *Gage* v. *Graham*, 57 Ill. 144; *Board of Directors for Leveeing Wabash River* v. *Houston*, 71 Ill. 318.

The objection to the legislation involved in these

cases lies either in the fact that the bodies to whom the taxing power was delegated were not municipal agencies, or that the legislature had imposed a system of taxation, for local purposes, upon the municipality in which the residents thereof had no voice in the selction of the taxing officers. No such objections, however, can be seriously urged against the act of the legislature creating the "Home Rule" statute. Act No. 279, Public Acts of 1909 as amended. In passing that act, the legislature left it optional with the electorate to decide whether they will accept its provisions. The municipality is free to accept or reject it. If they accept its provisions and afterwards become displeased with its workings, they may cast them off by the same process by which they were acquired. Therefore it cannot be said that the people of Wyandotte are subjected to a system in the creation of which they have had no voice. Neither can it be said that they had no voice in the selection of their representative. The proposed charter put it squarely up to the voters to say whether their representative should be appointed, and they have given their assent to it. Possibly it may be said that the people of Wyandotte are not the only ones interested, inasmuch as the board of supervisors legislate for the entire county. The answer to this is that the other townships and cities would have no more voice in the selection of Wyandotte's representatives, even if they were elected instead of being appointed.

But aside from these considerations, we think the question is foreclosed by the holding of this court in *Attorney General* v. *Preston,* 56 Mich. 177 (22 N. W. 261). The question there involved was the right of the president of the village of Mackinac to a seat on the board of supervisors of Mackinac county. In that case the court took occasion to construe sections 6 and 7 with respect to the power and duty of the legislature, and there said:

"The effect of the two sections, as we construe them, is to limit the power to give organized townships more than one representative on the board, and imposes the duty of giving cities some representation therein, but leaving the number of representatives, *and the manner of their selection, to the determination of the legislature.*"

This interpretation, therefore, clearly defines, not only the power but the duty of the legislature to prescribe what representation cities shall have upon the board, but also establishes its right to prescribe the manner in which such representation shall be selected. In the exercise of this authority the legislature has provided that such representation may be by election or appointment, and the very people who are to be affected have said by their charter that it shall be made by appointment. This is home rule, and is final.

Judgment for respondent, without costs.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.