BOARD OF EDUCATION OF TRAVERSE CITY *v.* STRAUB.

1. CONSTITUTIONAL LAW—CHARTERS—MUNICIPAL CORPORATIONS—
   TITLE—LOCAL ACTS—SCHOOLS AND SCHOOL DISTRICTS.
   A local act entitled "An act to incorporate the city of
   Traverse City in the county of Grand Traverse, and to
   repeal all acts and parts of acts in conflict therewith,"
   was sufficiently entitled to warrant the inclusion of pro-
   visions for the board of education and establishing a
   school district (Act No. 424, Local Acts 1895); especially
   after 20 years had passed during which the board of
   education had exercised its franchise and privileges as
   authorized by the act; and in view of 2 Comp. Laws,
   § 4650 (4 How. Stat. [2d Ed.] § 9871), providing that
   school districts shall be presumed to be legally organized
   after exercising the franchise of a district for two years.

2. SAME—SCHOOLS AND SCHOOL DISTRICTS.
   The legislature by Act No. 279, Pub. Acts 1909 (2 How.
   Stat. [2d Ed.] § 5442), has retained sole power to alter,
   amend or repeal special acts affecting the public schools.
   The electors of a city have no authority to amend the pro-
   visions of an act establishing the school district of Trav-
   erse City, by including matters in relation thereto in a
   new charter adopted under the Constitution and laws of
   1909.

3. SCHOOLS AND SCHOOL DISTRICTS—BONDS—BOARD OF EDUCATION
   —AUTHORITY TO ISSUE.
   The school district of the city of Traverse City was author-
   ized to issue bonds to raise money to build and repair
   school buildings, under the provisions of the general law,
   which are made applicable by the express terms of section
   10, title 7, of Act No. 424, Local Acts 1895.

4. SAME—BONDING LIMIT—STATUTES.
   And the limit of bonded indebtedness fixed by Act No. 12,
   Pub. Acts 1911 (4 How. Stat. [2d Ed.] § 9932), amending
   2 Comp. Laws, § 4717, and providing that the district may
   issue bonds up to 10 per cent. of the assessed valuation
   or $100 per capita, based on the census of school children,

was also applicable to said city, under section 10, title 7 of the local act.

5. SAME—ELECTIONS.

And, on the same ground, the election might be held at an annual or special meeting as the general law authorizes.

6. SAME—DELAY IN ISSUANCE.

The fact that the bonds were voted in 1913 and not issued until the next year would not be a reason for challenging their validity, the evidence tending to show that a contract had been let for the building of a schoolhouse and that the money was not needed until the later date.

Certiorari to Grand Traverse; Mayne, J. Submitted July 25, 1914. (Calendar No. 26,317.) Decided October 2, 1914.

Mandamus by the board of education of the city of Traverse City against John G. Straub, mayor of the said city, to compel respondent to sign a series of bonds. Writ denied: relator brings certiorari. Reversed.

*Covell & Cross,* for appellant.

*John W. Patchin,* for respondent.

McALVAY, C. J. These are certiorari proceedings to review the action of the circuit court for the county of Grand Traverse in denying relator a writ of mandamus. Relator is a school district comprising all the territory within the limits of the city of Traverse City. Act No. 424 of the Local Acts of Michigan was passed by the legislature of 1895, said act being entitled:

"An act to incorporate the city of Traverse City, in the county of Grand Traverse, and to repeal all acts and parts of acts in conflict therewith."

This was the act under which this city, formerly a village, was incorporated. By title 7 of said act the following provision is made:

"PUBLIC SCHOOLS.

"SEC. 1.   The city of Traverse City shall constitute one school district.   The members of the board of education shall be a body corporate by the name and style of 'The Board of Education of Traverse City,' and by that name may sue and be sued, and shall be subject to the laws of this State relative to corporations that may be applicable thereto.   They shall hold and control all moneys, real and personal property, or other rights belonging to said school district, and shall use and expend the same solely for the benefit of the public schools of said city."

By amendments to section 2, tit. 4, and to section 2, tit. 7, of this act, made by Act No. 631, Local Acts of 1905, it was provided that the board of education should consist of the mayor and five resident electors duly elected at the annual election of 1906, and annually thereafter one or more members for the term of three years.   These members of the board of education were to be elected at the annual city election.   The mayor was designated as president, the city treasurer as treasurer, and the city clerk as clerk of said board of education.

Title 7 also contained the further material provision:

"SEC. 10.   All provisions of the general laws of this State relative to schools shall apply and be in force in said city except such as may be inconsistent with the provisions of this act, or with the by-laws and ordinances of the board of education made under this act."

From the time of its creation under the act of 1895 up to the present time relator continued to exist as a body corporate and to administer the affairs of this school district by virtue of the powers and authority thereby granted.   On February 28, 1913, claiming by authority of the act under which it was incorporated and amendments thereto, and all applicable provisions

of the general laws of this State relative to public schools, relator, having determined that a greater sum of money was required for the erection and repair of school buildings within said district than could be raised by tax in any one year, under the city charter, adopted a resolution providing for submitting to the electors of the district the question of borrowing $78,000 and issuing bonds therefor at the regular election in said school district, to be held April 7, 1913. This election resulted in a vote of 1,105 votes cast in favor of, and 333 votes against, the proposition.

Having been authorized by a majority of the electors voting at this election to borrow said money and issue bonds therefor, the said board of education secured and adopted plans for a proposed school building, and on May 29, 1913, entered into a contract for the erection of a new school building, for the sum of $39,759. The contractor, under said contract, at once began the construction of the same, which, at the time mandamus proceedings were instituted, was nearly completed. Relator also adopted by resolution the form of the bonds to be issued, caused the same to be prepared for execution, and afterwards presented them to the mayor to be signed by him as its president. Respondent, mayor of Traverse City, refused to sign such bonds as president of the board of education and gave his reasons therefor in writing. Thereupon relator authorized by resolution the institution of proceedings against respondent for a writ of mandamus to compel him to sign said bonds. The petition was duly filed and served. Respondent answered, and upon the issue presented a hearing was had which resulted in an order and judgment of the court denying such writ. The case is before us for review upon a writ of certiorari sued out by relator.

Relator and appellant groups the questions to be considered, stating them as follows:

"(1) Legality of the organization of the school district.

"(2) Effect upon the school district of the adoption of the revised charter of 1913.

"(3) Authority of the school district to issue bonds.

"(4) Legality of the bonding election.

"(5) Effect of the lapse of time since bonds were voted."

1. Respondent questioned the legality of the organization of the school district upon the ground that in the title of Act No. 424 of the Local Acts of 1895, under which the city of Traverse City was incorporated, the organization of a school district is not included, and therefore it is invalid within the prohibition of the Constitution that no act shall embrace more than one subject, which shall be expressed in its title. As far as we are able to find, this is the first time this question has been raised. Local acts for the incorporation of cities from the time of the adoption of the Constitution of 1850 have been passed by the legislature repeatedly entitled in practically the same language as the act in question, and have provided for the organization of school districts, creating all the usual and necessary machinery for establishing and conducting public schools within their limits. Further, chapter 88, 1 Comp. Laws, which makes provision for the incorporation of cities, being Act No. 215, Pub. Acts 1895 (being the year in which the act under consideration was passed), is entitled "An act to provide for the incorporation of cities of the fourth class."

Section 1 of the chapter of this act devoted to "Education" (being compiler's section 3338) provides:

"Each city incorporated under this act shall constitute a single school district. Such school district shall be a body corporate, by the name and style of the 'public schools of the city of ———' * * * and shall possess the usual powers of corporations for

public purposes; and in that name may sue and be sued, and purchase, acquire, hold and dispose of such real and personal property as is authorized to be purchased, acquired or disposed of by this chapter. * * * *"

In the case of the charters of other cities, as well as the one under consideration, which have been granted by special acts of the legislature to municipalities and accepted by them, it is clear that the matter of providing schools and the means of education has always been considered an important part of the functions of every municipality the organization of which was as essential as the organization of any department of the city government. Not only does this appear from the repeated instances of granting charters to cities providing for the organization of public schools without designating that subject in the title, but also from the fact that for many years this has continued to be accepted by the legal profession as a proper construction of such entitling.

Relator, from the time of its incorporation under and by virtue of the act of 1895 up to the present time, as a body corporate has exercised the franchises and privileges of a school district for about 20 years. By statute it is presumed to have been legally organized.

"* * * Every school district shall, in all cases, be presumed to have been legally organized when it shall have exercised the franchises and privileges of a district for the term of two years. * * *" Section 4650, 2 Comp. Laws (4 How. Stat. [2d Ed.] § 9871).

There is no merit in the claim that title 7 of the act in question is void because the matter of establishing a school district is not expressed in the title.

2. By reason of the adoption of a revised charter by the electors of the city of Traverse City in 1913, respondent claims that the provisions of Act No. 424

of the Local Acts of 1895 are repealed and he is no longer president of the board. The act under which this charter was revised is Act No. 279, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 5442 *et seq.*), entitled "An act to provide for the incorporation of cities and for changing their boundaries." In the revised charter, under title "The Board of Education," we find the following provision:

"SEC. 230. The city of Traverse City shall constitute a single school district. The board of education shall be a body corporate by the name and style of the Board of Education of Traverse City," etc.

An examination of this act shows that this subject was not expressed in the title, and that the body of the act expressly prohibited any such local legislation.

"Each city may in its charter provide:    *    *    * (p) for altering, amending or repealing any special act affecting any existing municipal department, but the department in control of the public schools shall not be construed to be a municipal department." Section 4, Act No. 279, Pub. Acts 1909, subd. p, p. 500.

This section provides for permissive changes which may be made in existing charters. In the subdivision above quoted the fixed legislative intent already mentioned—to protect and preserve the public schools of the State—is apparent, and interference with such schools is prohibited. It does not require argument in view of the provisions of this act to make it clear that the legislature retained in itself the sole power to alter, amend, or repeal special acts affecting the public schools of the State. The electors of Traverse City, therefore, had no authority to amend the provisions of Act No. 424, Local Acts of 1895, relative to public schools, being title 7 of said act.

It follows that the adoption of the revised charter of 1913 in no manner changed or affected the status or powers of relator as a body corporate or the pro-

visions of the original charter respecting the public schools of the city of Traverse City, and that respondent is the president of the board of education of the city of Traverse City, the relator herein.

3. The authority of the school district to issue bonds is challenged by respondent not only upon the ground that it no longer is a legal entity, but that under the provisions of the charter of 1895 no such authority was given. In a recent case this question was considered at length and passed upon against the contention of respondent.

In the case of *Public Schools of Muskegon* v. *Smith,* 173 Mich. 570 (139 N. W. 264), which upon its facts is very similar to the instant case, relator was incorporated under Local Act No. 281 of 1899, which, among other things, contained in identical words the provisions above quoted from the act under which relator was incorporated respecting all provisions of the general laws of the State relative to public schools being applicable and in force in said district. This court held that, under its charter and the laws of the State relative to public schools, the relator was authorized to raise money by taxation for the purposes intended and to issue bonds for the same. Under the charter creating it relator in the instant case was in terms authorized, among other things, to raise money to repair schoolhouses, and in the notice under which the election was held it was expressly stated that the money raised was to be expended for the erection and repair of school buildings.

A further contention bearing upon the legality of the bonds is that the amount to be raised was larger than authorized by the charter. This court held, in *Public Schools of Muskegon* v. *Smith, supra,* that the provisions of the general school laws are applicable to relator's district, under section 4717, 2 Comp. Laws,

as amended by Act No. 12, Pub. Acts 1911 (4 How. Stat. [2d Ed.] § 9932). It therefore follows the sum of $78,000 was within the limit provided by this section as amended, and consequently authorized by law.

4. Respondent challenges the legality of the bonding election. This contention is based upon the claim that the bonding election was held at the annual meeting of the district, and not at a special meeting called for that purpose, as required by the terms of section 7, tit. 7, of the act under which relator was incorporated. We again refer to the holding in the case of *Public Schools of Muskegon* v. *Smith, supra,* that the provisions of the general school laws are applicable and may be invoked by relator. Under the provisions of section 4717, 2 Comp. Laws, as amended, *supra,* such questions may be submitted at an annual or a special meeting called for that purpose.

5. Another question presented relates to the matter of delay in issuing these bonds. They were voted in April, 1913, and issued for signature in April, 1914. This question was suggested by respondent in the case of *Public Schools of Muskegon* v. *Smith, supra,* but was not passed upon. In the instant case it appears that relator, within 30 days after it was authorized to issue bonds for the purposes mentioned, let a contract for the construction of this school building, and that the same had proceeded almost to completion at the time the bonds were issued and presented to respondent for his signature. A necessary inference would be that these bonds were not issued until needed. We do not find in this delay any reason for criticising relator. On the contrary, it would seem commendable that this board was businesslike in saving to the school district as much interest as possible upon this considerable sum of money.

From the foregoing conclusions we find that the

circuit court was in error in denying relator a writ of mandamus.

The judgment of the circuit court is therefore reversed, without costs.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.