KOPCZYNSKI v. SCHRIVER.

1. MUNICIPAL CORPORATIONS — GRAND RAPIDS CHARTER — MAYOR — ELECTION—WORDS AND PHRASES.

The charter of the city of Grand Rapids, adopted under the provisions of the home rule act (Act No. 279, Pub. Acts 1909, 1 Comp. Laws 1915, § 3304 et seq.), is not invalid in that it provides for the election by the city commission of one of its members as mayor, while said statute requires that the charter provide for the "election" of a mayor, since "election" is not limited to the act or process of choosing a person for public office by a vote of the qualified electors. Attorney General v. Bryan, 182 Mich. 86 (148 N. W. 392).

2. SAME—GRAND RAPIDS CHARTER—DUTIES OF MAYOR—CITY MANAGER—CONSTITUTIONAL LAW.

In mandamus proceedings to compel the city clerk of Grand Rapids to accept and file a certain nominating petition, it is unnecessary for this court to decide whether the powers conferred upon the city manager by the charter conflict with those conferred on the mayor, or whether there is a conflict between the provisions of the charter and the home rule act, where there is no such conflict as to raise a constitutional question, or to make the charter as an entirety invalid.

3. SAME—SCHOOLS AND SCHOOL DISTRICTS.

 Under the provisions of the general tax law (1 How. Stat.
     [2d Ed.] § 1814, 1 Comp. Laws 1915, § 4042) providing
     that "in cities where some special provision is made for
     demand or collection of taxes the collector or treasurer
     shall comply with such special provision, otherwise be
     bound by the provisions of this act," a new city charter
     which repealed the old charter except the provisions re-
     lating to schools which are expressly kept in force, is not
     invalid as failing to provide for levy, collection, and return
     of school taxes in conformity with the general laws of
     the State. *Board of Education* v. *Straub*, 182 Mich. 665
     (148 N. W. 716).

Certiorari to Superior Court of Grand Rapids; Dun-
ham, J. Submitted January 2, 1917. (Calendar No.
27,679.) Decided February 8, 1917.

Mandamus by Anthony J. Kopczynski against James
Schriver, city clerk, to compel respondent to accept and
file a certain nominating petition. From an order de-
nying the writ relator brings certiorari. Affirmed.

*George C. Brown,* for relator.

*Sheridan F. Master* and *Jewell & Smith,* for re-
spondent.

MOORE, J. The questions involved are so clearly
stated in an opinion filed by the court below that we
quote from it as follows:

"This cause came on to be heard upon an order to
show cause why a peremptory writ of mandamus
should not be issued against respondent to compel him
to accept and file the nominating petition of relator as
a candidate for nomination for the office of alderman
of the Fourth ward of the city of Grand Rapids, Kent
county, Mich.

"Relator's petition avers that he is a qualified elector
of said ward, and respondent the city clerk of the
city of Grand Rapids, that relator presented his peti-
tion to respondent for filing as a candidate for the

nomination of alderman of said Fourth ward, and that respondent refused to receive and file the same.

"Respondent to show cause filed an answer denying that there is any such office in the city of Grand Rapids to be filled as alderman of the Fourth ward, as stated in relator's petition, and that he refused to receive and file such petition for that reason. And for these reasons respondent moved the court to dismiss said petition.

"Relator claims in his petition that the charter of the city of Grand Rapids * * * is invalid for several reasons. * * *

" (2) By proper election and qualification a charter commission was constituted to, and which did, prepare a proposed charter for the city of Grand Rapids under the 'Home Rule Act,' so-called, and which proposed charter was submitted to the electors of the city of Grand Rapids on the 29th day of August last, and for its adoption there were cast 7,693 votes, and against it 6,021 votes. On September 5, 1916, said votes were canvassed by the common council of the city of Grand Rapids, after which it issued the following certificate:

"Whereupon we certify that, 'Yes,' having received a majority of all the votes cast the proposition was declared carried.

"There were 23 councilmen voting, all voting 'Yes,' and within 30 days thereafter the city clerk certified to four copies of said resolution and to four printed copies of said charter, and filed two copies each with the secretary of State and the county clerk, respectively.

"The proposed charter undoubtedly became the charter of Grand Rapids on the 5th day of September last, or at least within 30 days thereafter, and is now the city charter of the city of Grand Rapids, Kent county, Mich., unless it is void by reason of it, or some parts of it, being contrary to the Constitution of this State, or so in contravention of the general laws of this State as to be null and void.

" (3) This charter does not provide for any such office as 'alderman,' and by the terms of said charter there is to be no 'alderman' elected, and at the time relator tendered his petition for nomination for the

office of 'alderman' to respondent there was no such office to be filled in the city of Grand Rapids.   *   *   *

"No direct proceeding has been brought, as far as I know, to test the validity of the present charter of this city. However, attorneys for respondent in open court waived, so far as they have power to waive, any question herein concerning the forms of action.   *   *   *

"(7) Relator asks for a writ of peremptory mandamus to compel the city clerk of this city to receive his nominating petition for alderman.

"It is true he relies upon the right to this writ upon the assumption and argument that the charter adopted on August 29th last is unconstitutional and void.   To test that particular question I do not believe that mandamus is the proper remedy.

"And for the two reasons above stated, namely, *first*, that it does not appear to me that the present city charter is unconstitutional and void, and, *second*, for the reason that I do not believe the relator is the proper party, and mandamus the proper remedy to have determined the legality of the present city charter, relator's petition is dismissed, but without costs."

Counsel upon both sides waive any question of the form of the procedure.   The case has been argued at length, both orally and in the briefs upon the merits. The questions involved are of public interest, where a speedy determination is desirable, and we have decided to dispose of the proceeding upon the merits without deciding whether mandamus is the proper remedy.

We quote from the brief of counsel:

"The petition for the writ of mandamus alleged that the new charter was invalid on three grounds, which three grounds are relied on here.   They are:

"(1) The new charter provides that the city commission shall annually elect one of its members mayor. This contravenes subdivision '*a*' of section 3 of the home rule act, requiring that each city charter shall provide for the *election* of a mayor.

"(2) The new charter provides that the administrative power shall be vested in the city commission

which appoints a city manager who is vested with the executive authority under control of the commission. This contravenes subdivision '*a*' of section 3 of the home rule act, requiring that the mayor shall be the executive head.

"(3) By providing for the levy, collection, and return of school taxes not in conformity with the general laws of the State, as required by subdivision 'E' of section 3 of the home rule act."

The State Constitution (article 8, §§ 20, 21) provides:

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts.

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

The legislature in compliance with the provision passed what is known as the home rule act (Act No. 279, Pub. Acts 1909 [1 Comp. Laws 1915, § 3304 *et seq.*]). What was done by the city of Grand Rapids subsequently appears in what we have quoted from the opinion of the trial judge.

The charter which was adopted contains so many provisions that it requires more than 70 printed pages to contain them.

Section 7 of the new charter provides:

"There is hereby established for the government of the city of Grand Rapids a city commission of seven members, one member of which shall be mayor."

Section 54 provides:

"The city commission shall annually organize by the election of one of its members as mayor and one as president, and shall also choose its other officers. It shall fill all vacancies in its membership until the next municipal election. It shall be the judge of the election and qualifications of its members and shall determine the rules of its procedure."

Section 3 of Act No. 279, Pub. Acts 1909 (the home rule act), provides:

"SEC. 3. Each city charter shall provide:

"(*a*) For the election of a mayor who shall be the executive head, and a body vested with legislative power, and for the election or appointment of a clerk, a treasurer, an assessor or board of assessors, and a board of review:

"(*b*) For the election or appointment of such other officers as may be deemed necessary." (1 Comp. Laws 1915, § 3306).

Counsel say:

"In thus providing for the election by the city commission of one of its members as mayor the new charter contravenes the mandatory provisions of section 3 of the home rule act, above quoted, requiring the charter to provide for the *election* of a mayor. The term 'election' as used in section 3 of the home rule act means a popular election by the people."

In 3 Words and Phrases, p. 2330, there are many definitions of the word "election." One of them reads:

"The word 'election' is not limited in its definition and meaning to the act or process of choosing a person for a public office by a vote of the qualified electors at the time, place and manner prescribed by law. The Century Dictionary defines 'election' to mean a deliberate act of choice; particularly a choice of means for accomplishing a given end; the choice of a person or persons for office of any kind by the voting of a body of qualified or authorized electors. In Worcester's Dictionary the word 'election' is defined as the act of

electing or choosing; power of choosing; free choice; preference; selection. *State* v. *Hirsch,* 125 Ind. 207 (24 N. E. 1062, 1063, 9 L. R. A. 170)."

A similar question to the one involved here was presented in *Attorney General* v. *Bryan,* 182 Mich. 86 (148 N. W. 392). The case is so recent and so easily accessible that we content ourselves with making a reference to it.

If the home rule act was intended to restrict the election of a mayor to a popular election, it would have been easy to say so. We do not think the charter provision as to the election of mayor is illegal

2. Section 88 of the charter provides as follows:

"(88) (*a*) SEC. 2. Insofar as required by law, and for all ceremonial purposes, the mayor shall be recognized as the executive head of the city. He shall preside at the meetings of the city commission and shall have a vote in the proceedings but no veto power.

"(*b*) He shall authenticate, by his signature, all ordinances passed or enacted by the city commission and such other instruments as the city commission, this charter, or the laws of the State require.

"(*c*) He shall exercise only such powers as the State laws, this charter, or the city commission specifically confer upon him."

Section 87 deals with the powers conferred upon the city manager.

It is said:

"These provisions vesting power in the city commission and the city manager, and divesting the mayor of power contravene subdivision 'a' of section 3 of the home rule act, requiring that:

"'Each city charter shall provide: For the election of a mayor, who shall be the executive head.'"

We do not feel called upon in this proceeding to decide whether the powers conferred upon the city manager conflict with those conferred on the mayor, or whether there is a conflict between the provisions

of the charter and the home rule act, and, if so, which of them must yield. We are quite clear, however, that there is no such conflict as to raise a constitutional question, nor to make the charter as an entirety invalid.

It is said:

"The charter does not provide for the levy, collection, and return of school taxes in conformity with the general laws of the State."

The provisions in the new charter are the same as those in the charter which preceded it.

By section 46 of the general tax law (1 How. Stat. [2d Ed.] § 1814 [1 Comp. Laws 1915, § 4042]) it is expressly provided:

"In cities where some special provision is made for demand or collection of taxes, the collector or treasurer shall comply with such special provision, otherwise be bound by the provisions of this act."

Section 298 of the charter reads:

"The existing charter, being Act No. 593, Local Acts of 1905, and all acts amendatory thereto or forming a part thereof, are hereby repealed, except title xiv of said act, relating to the board of education. * * * Title xiv of said Act No. 593 of the Local Acts of 1905, being the title covering the board of education, and the acts amendatory thereto, are hereby continued in full force and effect. All other special acts supplementary to the existing charter of the city are hereby repealed so far as inconsistent with the provisions of this charter and so far as consistent therewith are hereby continued in force, until the same are superseded by lawful authority exercised under this charter or otherwise."

We think the objection of the plaintiff is fully met by *Board of Education* v. *Straub*, 182 Mich. 665, 671 (148 N. W. 716).

Counsel has not called our attention to any constitutional provision which has been violated by the terms

of the charter, nor is any conflict shown between its provisions and those of the home rule act so vital as to make the charter invalid.

The judgment of the court below is affirmed, but, as the question involved is one of public interest, it is without costs to either party.

KUHN, C. J., and STONE, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.