CITY OF CLIFTON, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF, v. STANLEY ZWIER, FRANK F. STAUDT, STEPHEN GOCELJAK, Jr., CHARLES F. HAHN AND WILLIAM HOLSTER, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 23, 1961.

*Mr. Edward F. Johnson,* attorney for plaintiff City of Clifton.

*Mr. John G. Dluhy,* attorney for defendants Zwier, Staudt and Goceljak.

*Messrs. Gurtman & Schomer,* attorneys for defendant Hahn (*Mr. William N. Gurtman,* appearing).

*Messrs. Friend and Friend,* attorneys for intervenor James J. Talamini (*Mr. Israel Friend,* appearing).

*Mr. William Holster,* attorney *pro se,* defendant.

NADELL, J. C. C. (temporarily assigned). This is a suit for a declaratory judgment but is equivalent to a proceeding in lieu of the prerogative writ of *quo warranto* between contesting claimants to the offices of members of the Planning Board of the City of Clifton. The matter comes up on motion for summary judgment.

On April 20, 1943 the City of Clifton, by ordinance, created a planning board pursuant to the enabling statute, *R. S.* 40:55–1 *et seq., L.* 1930, *c.* 235, repealed and replaced by *L.* 1953, *c.* 433 (*N. J. S. A.* 40:55–1.1 *et seq*).

Until November 1, 1960 appointments to the planning board were made by the mayor. Adhering to precedent, on October 26, 1960 the mayor, Stanley Zwier, appointed Frank Staudt, the tax collector of the city, as a class II member of the board, effective immediately, and on the same day

appointed Stephen Goceljak, Jr., as a class IV member for a term to commence January 1, 1961. They were immediately sworn into office.

On November 1, 1960 the city council adopted resolutions reappointing William Holster, the municipal manager, to succeed himself as the class II member of the planning board, effective immediately, and Charles F. Hahn a class IV member to succeed himself for a term to commence January 1, 1961. They, too, were sworn into office.

The City of Clifton is a municipal corporation of the State of New Jersey which, in 1934, duly adopted the provisions of the municipal manager form of government law. *R. S.* 40:79–1 *et seq., L.* 1923, *c.* 113.

Appointments to the planning board must be made in accordance with the applicable section of the Municipal Planning Act (1953), *N. J. S. A.* 40:55–1.4, which provides:

"The governing body may by ordinance create a planning board of not less than five nor more than nine members. The members shall consist of, and be divided into, for convenience in designating the manner of appointment, the four following classes:
Class I—mayor.
Class II—one of the officials of the municipality to be appointed by the mayor.
Class III—a member of the governing body to be appointed by it.
Class IV—other citizens of the municipality to be appointed by the mayor.
\* \* \* Members may, after a public hearing, be removed for inefficiency, neglect of duty, or malfeasance in office by the officer or body appointing them."

It is clear that the "mayor" is the individual who is to appoint the class II and IV members. The act specifically defines "mayor" in *R. S.* 40:55–1.2:

"As used in this act:
\*      \*      \*      \*      \*      \*      \*      \*
'Mayor' means the elected official who serves as the chief executive of the municipality, whatever his official designation may be."

The municipal council contends that the chief executive of the municipality is the municipal manager, but that he

is an appointive and not an elected official. The council argues that since neither the mayor nor the city manager is qualified, the power of appointment is not in limbo but rather resides in the council as the elected body of the municipality; *i. e.,* the municipal council is the elected official, and under the broad powers granted to the council by *R. S.* 40:81–9 it has power equivalent to that of a chief executive.

*R. S.* 40:81–9 provides:

"The municipal council shall be the governing body of the municipality and except as herein otherwise provided, shall have and possess all administrative, judicial and legislative powers and duties now had, possessed and exercised by the governing body of such municipality and all other executive or legislative bodies in such municipality, and shall have complete control and supervision over the affairs of the municipality to be exercised in the manner herein prescribed."

The mayor contends that the Planning Act is a separate unit and need not be interpreted, at least in regard to the appointment sections, in light of the municipal manager form of government law. The council also contends that the term "mayor," in regard to class I, means mayor, and the mayor argues that the term "mayor" means mayor in regard to class II and IV appointments. The mayor likewise claims that the municipal manager is appointed rather than elected.

A taxpayer, James J. Talamini, whom the court has allowed to intervene, contends that the power of appointment resides in the municipal manager.

For the reasons that follow, the court agrees with the intervenor, and holds that the power of appointment of Class II and Class IV members resides in the municipal manager.

## I.

It already appears from the cited statutes that the term "mayor" as used in *N. J. S. A.* 40:55–1.4 is in effect equivalent

to the individual in the municipality who is (1) the chief executive, and (2) an elected official. *N. J. S. A.* 40:55–1.2, *supra*. This was a means by which the Legislature obviated the possibility of confusion and verbiage that would result from repeating throughout the statute the phrase, "the elected official who is the chief executive of the municipality, whatever his official designation may be." Since the Planning Act is applicable to any municipality that adopts it, regardless of the form of government the municipality has selected (commission, council manager, mayor council, etc.) such a definition was necessary. The court is bound by the definition the Legislature has given to the term "mayor." *Eagle Truck Transport, Inc. v. Board of Review, etc.,* 29 *N. J.* 280, 289 (1959).

It is quite clear that the term "chief executive" is not defined in the Planning Act itself. In certain cases it might be necessary to analyze the governmental structure of a municipality in order to ascertain precisely who is the chief executive. However, a city such as Clifton, that has adopted the municipal manager form of government law, always has as its chief executive the municipal manager. *R. S.* 40:79–2: "* * * 'Municipal manager' means the chief executive and administrative officer * * * [of any municipality governed by *R. S.* 40:79–1 *et seq.*]."

*R. S.* 40:82–4, provides:

"The municipal manager shall:
a. Be the chief executive and administrative official of the municipality;
* * * * * * * *
d. Appoint and remove all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided in this subtitle, supervise and control his appointees, and report all appointments or removals at the next meeting thereafter of the municipal council;
* * * * * * * *
j. Perform such other duties as may be required of the municipal manager by ordinance or resolution of the municipal council.
The municipal manager shall in all matters act under the direction and supervision and subject to the approval of the municipal council."

Not only is the municipal manager given the power of appointment in the above section, but *R. S.* 40:82–5 provides:

"In any act or ordinance a provision conferring the power of appointment or other power upon the mayor or other executive head of the municipality shall be construed as meaning the municipal manager in a municipality governed under this subtitle, and the appointments or the power exercised by the municipal manager in accordance with such provision shall be classified and given the same force and effect as if executed by the official named therein, except that members of the board of education and of the trustees of the public library, whenever required to be appointed by any such provision by any board or official of the municipality, shall be appointed under this subtitle by the mayor."

Our cases have indicated that the municipal manager is the chief executive of a municipality such as Clifton, with the power of appointment vested exclusively in him except where the statute provides another method of selection.

In *Ware v. Board of Com'rs of City of Cape May,* 120 *N. J. L.* 48, at *p.* 50 *(Sup. Ct.* 1938), affirmed 121 *N. J. L.* 545 *(E. & A.* 1938), the court stated:

"By section 200 of article 2, and section 804 (a) of article VIII, the municipal manager is constituted 'the chief executive and administrative officer' of the municipality. Section 804 (d) of article VIII vests in the manager authority to 'appoint and remove all department heads and all other officers, subordinates, and assistants for whose selection or removal no other method is provided' in the act, and to 'supervise and control his appointees'; and he is therein directed to 'report all appointments or removals at the next meeting thereafter of the municipal council.' See, also, section 806 of article VIII. The statute provides 'no other method' for the selection of municipal servants of prosecutors' class, and the power of appointment was therefore the sole office of the manager."

At *page* 51 of 120 *N. J. L.*:

"Councilmanic interference with the exclusive functions of the city manager is violative of the very essence of this statutory system of government. The basic policy is expressed in terms that admit of no doubt as to the legislative purpose. All municipal servants shall be selected 'with reference to their qualifications and

fitness for the public service required of them and without reference to their political faith or affiliations.' Section 901, article 9. The legislature has, with certain exceptions, entrusted the administration of this policy to the manager. That is one of the outstanding features of this modern scheme of local government. See, also, section 708, article 7."

In *Capibianco v. Civil Service Commission*, 60 *N. J. Super*. 307 (*App. Div*. 1960), both the mayor and the city council recommended that the deputy police chief be appointed as chief of police. The court held that the power of appointment resided in the city manager and was not subject to the action of the city council. At *page* 316 of 60 *N. J.*, Judge Goldmann said:

"It need hardly be said that the action of the governing body on January 14, 1958 in recommending Capibianco's appointment as chief of police was not binding on the city manager. * * * Similarly, the governing body's approval of an increase in Capibianco's salary to that of chief was certainly not binding on the city manager. *He alone had the authority to appoint the head of the department as provided by law.* R. S. 40:82–4(d) and 5. * * * (Emphasis added.)

In *Townsend v. Pequannock Twp.*, 47 *N. J. Super*. 294, at *pages* 301–303 (*Law Div*. 1957), in construing sections of the Optional Municipal Charter Law, *N. J. S. A.* 40:69A–1 *et seq.*, Judge Hall pointed out:

"* * * The important thing is that the general power of appointment is given the manager with exceptions reposed in the council, either directly or by being able to prescribe the manner of appointment. This carries out the basic theory of the manager form of government, since the officers and boards specified in section 89, that relating to manner of appointment by the council, are not in the administrative field except as to the manager himself and the clerk. The manager is the chief executive and administrative officer of the municipality, and the statutory sections concerning appointments must be construed in that light.
* * * Moreover, in the original Municipal Manager Act, particularly *R. S.* 40:81–11 and 40:82–4(b), we find substantially analogous provisions, and our courts have held under them that an appointment of a fireman by the council was illegal. The power of appointment was vested in the manager. [Citing *Ware, supra*.]
* * * * * * * *

I have not the slightest doubt that paragraph O [making the appointment power of the manager subject to approval of the council] is illegal as an invasion of the manager's power of appointment given him under the statute and the ordinance. In view of the explicit statutory provisions that cannot be saved by the general expression of powers granted to the municipality by *N. J. S. A.* 40:69A–29(a), the paragraph is declared invalid."

In *Raff v. Sesnick*, 44 *N. J. Super.* 271 (*Law Div.* 1957), an ordinance of Fair Lawn was held to be invalid in that the mayor rather than the municipal manager was empowered to appoint members of the Rent Control Commission.

If the present planning statute defined mayor as "the chief executive of the municipality, whether the official designation of his office be mayor, manager or otherwise," there would be no question but that the reference to mayor in reality referred to municipal manager in municipalities governed by the municipal manager form of government. 3 *McQuillin, Municipal Corporations* (3d ed. 1949), § 12.73; *Schlobohm v. Municipal Housing Authority*, 270 *App. Div.* 1022, 62 *N. Y. S.* 2d 541 (*App. Div.* 1946), affirmed 297 *N. Y.* 911, 79 *N. E.* 2d 742 (*Ct. App.* 1948). In the *Schlobohm* case the mayor had appointed members of the Municipal Housing Authority for the City of Yonkers. In holding that the power resided in the city manager, the court stated at *page 542* of 62 *N. Y. S.* 2d:

"While the Public Housing Law * * * provides for the appointment of members of the Municipal Housing Authority by the 'mayor', the word 'mayor' as defined by the same statute * * * means the chief executive officer of the municipality. The record before us shows that by the local laws of the City of Yonkers the City Manager is the chief executive officer of the city. Accordingly, the City Manager had the power of appointment and the petitioners, who claim by virtue of his appointment are entitled to be recognized as members of the authority."

There can be no question but that in a municipal manager form of government the municipal manager is the chief executive with the correlative powers of appointment devolving upon him. In this form of government the mayor

is little more than the "chairman" of the municipal council, with powers of appointment only in regard to the trustees of the public library and members of the board of education. *R. S.* 40:82–5, 40:81–8.

## II.

The Municipal Planning Act (1953) not only requires that the "mayor" be the chief executive, although this would appear to be the basic qualification, but also that he be an elected official.

The original Planning Act, *L.* 1930, *c.* 235, was repealed *in toto* by the Municipal Planning Act (1953), *L.* 1953, *c.* 433. Substantial changes were made, the purpose being to "remove conflicting, vague and contradictory elements in present legislation and at the same time [correct] procedures of questionable legality. It [strengthened] the planning statutes and [clarified] the responsibility of planning boards. It [adhered] to the principle of home rule and [provided] an entirely permissive set of legislation. Together, this [*Senate Bill* 224, 1953] and the companion bills [gave] a closely related set of legislation for the equitable control of land development." Introductory Statement to *Senate Bill* 224, *N. J. Legislative History* 1569 (1953). A comprehensive analysis of the changes effected by the new act is set forth in Professor Cunningham's recent article, *"Control of Land Use in New Jersey under the* 1953 *Planning Statutes,"* 15 *Rutgers L. Rev.* 1 (1960).

"Mayor" was defined in the original act as "the chief executive of the municipality, whether the official designation of his office be mayor, manager or otherwise." *R. S.* 40:55–1. The present act defines "mayor" as "the elected official who serves as the chief executive of the municipality, whatever his official designation may be." *N. J. S. A.* 40:55–1.2. The court has been unable to discover any indication that a change was being made in the substantive meaning of the definition of "mayor." Herbert Smith states

that the only change made in regard to the planning board section under judicial review in the instant case was the omission of the phrase "ex officio" in *N. J. S. A.* 40:55–1.4. Smith, "The Importance of the New Planning Legislation to your Municipality," 30 *New Jersey Municipalities,* 7–8 (1953). The annotators of the *Annotated Suggested Revision of Municipal Planning Enabling Act, State of New Jersey* (1952), indicate that the definition section was enlarged "to present a clearer meaning of terms," without a hint that the definition of the term "mayor" was altered.

Certainly, with reference to the municipal manager form of government, the definition remains the same, since the municipal manager is an "elected official," even though the statute speaks of his "appointment." Both the mayor and municipal manager are selected by a majority vote of all the members of the council. *R. S.* 40:82–1, 40:81–7.

▌ It has been established in New Jersey that an individual who is selected by means of the majority vote of a city council is elected, although he may also be said to be appointed. *Reid v. Gorsuch,* 67 *N. J. L.* 396 (*Sup. Ct.* 1902); *Vreeland v. Pierson,* 70 *N. J. L.* 508, 510 (*Sup. Ct.* 1904). In *Reid* the court was asked to determine whether a town treasurer was "elected" within the meaning of the Tenure Act of 1897 making the term of office for an "elected" treasurer three years. In that case the treasurer was chosen by the affirmative vote of the town council. In holding that he was "elected" the court stated, 67 *N. J. L.,* at *pages* 401–402:

"* * * '[E]lection' signifies the act of choosing, where several participate in the selection. 'Appointment' relates to the bestowal of the office upon the person selected, whether the choosing be the act of one or of many. * * * [W]here the power of making an appointment resides in a numerous body, the exercise of the power necessitates a previous agreement, by a majority of voices or otherwise, with respect to the person to be chosen, and the choice so made is an election; after which the person selected receives the appointment, and can properly be said to be 'appointed,' although he is the choice of many."

510

The same conclusion has been reached by most courts presented with the issue of whether an individual who is selected by the majority vote of a municipal council or similar body is "elected" or "appointed." *Main v. Claremont Unified School District,* 161 *Cal. App.* 2d 189, 326 *P.* 2d 573, 577 (*Cal. Ct. App.* 1958); *Alexander v. Booth,* 56 *So.* 2d 716, 719 (*Fla. Sup. Ct.* 1952); *Bridges v. McCorvey,* 254 *Ala.* 677, 49 *So.* 2d 546, 549 (*Ala. Sup. Ct.* 1950); *Van Cleve v. Wallace,* 216 *Minn.* 500, 13 *N. W.* 2d 467, 469 (*Minn. Sup. Ct.* 1944); *Hill v. City of Rector,* 161 *Ark.* 574, 256 *S. W.* 848, 849 (*Ark. Sup. Ct.* 1923); *Kopczynski v. Schriber,* 194 *Mich.* 553, 161 *N. W.* 238, 239 (*Mich. Sup. Ct.* 1917); *State v. Williams,* 60 *Kan.* 837, 58 *P.* 476, 477 (*Kan. Sup. Ct.* 1899); *Commonwealth v. Root,* 96 *Ky.* 533, 29 *S. W.* 351, 352 (*Ky. Ct. App.* 1895); *Wickersham v. Brittan,* 93 *Cal.* 34, 28 *P.* 792, 793, 15 *L. R. A.* 106 (*Cal. Sup. Ct.* 1892).

I conclude, therefore, that the municipal manager of Clifton is the "elected official who serves as the chief executive" of that municipality. This means then that class II and class IV members of the planning board are to be appointed by the municipal manager.

It seems to comport with the underlying policy of the municipal manager form of government that the manager make the appointments. That policy is expressly propounded in the appointment statutes cited *supra*. The actions of the planning board are subject to approval by the municipal council. *N. J. S. A.* 40:55–1.19, 40:55–1.18. The municipal manager holds office only "as long as he shall perform the duties of his office to the satisfaction of the municipal council."\* *N. J. S. A.* 40:82–3. In light of the *quantum*

---

\* "During the first three consecutive calendar years of his employment he may be removed for or without cause and after said three-year period of employment he may be removed only for cause, after hearing, by a resolution signed by one more than a majority of all the members of the municipal council setting forth the reasons for such removal."

of control residing in the elected municipal council, it is difficult to apprehend how the will of the people could long be subverted by a municipal manager. The chance of friction between the municipal manager and the council seems to have been reduced to a minimum since the council selects the manager. In fact, in Clifton the council recently attempted to reappoint William Holster, the present municipal manager, as a class II member of the planning board.

### III.

The original Planning Act provided that the class I member of the council be the mayor, *ex officio*. The phrase, *"ex officio,"* was advisedly used to distinguish the term "mayor" which might also mean municipal manager, etc., used in regard to classes II and IV. In other words, the class I member of the board was to be the individual who was mayor by virtue of his office. Under that definition, in the instant case class I would be comprised of the mayor, not the municipal manager. However, as noted earlier, the phrase was deleted in the 1953 act. That being the case, the term "mayor" has the same meaning in each class, and class I consists of the municipal manager. Unless there is a clear intention to the contrary manifested, where a word is used more than once in a statute it has the same meaning throughout. *Jersey City v. Zink,* 133 *N. J. L.* 437, 456 (*E. & A.* 1945). This result would appear to lead to harmony within the planning board and with the council. The manager would be working with the men that he has appointed along with men appointed by the council that appointed him.

A judgment may be presented, consented to as to form, in accordance with these views.