# CHARLESTON.

STATE *ex rel.* J. E. COOK, *Admr. v.* W. E. DOSS, *et al.*

(No. C. C. 382.)

Submitted September 14, 1926.   Decided September 21, 1926.

SHERIFFS AND CONSTABLES—*Constable, Appointed by County Court to Fill Vacancy, Who Had Taken Oath and Given Official Bond, Was Authorized to Carry Revolver Without License, and Sureties Were Liable for His Unlawful or Careless Use Thereof (Code, c. 4, § 9, c. 10, §§ 6, 14, and c. 418, § 7).*

. A constable appointed by the county court to fill a vacancy, pursuant to section 9 of chapter 4 of the Code, who had taken the oath of office and given the official bond required by the statute in the penalty of thirty-five hundred dollars, was authorized by section 7 of chapter 148, Barnes' Code 1923, to carry a revolver or other pistol without obtaining a license therefor, and the sureties on his said bond are liable for the damages done by his unlawful or careless use of such weapon.

(Sheriffs and Constables, 35 Cyc. p. 1900.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Case Certified from Circuit Court, Boone County.

Action by the State, on the relation of J. E. Cook, administrator, against W. E. Doss and others. After sustaining a demurrer to the declaration the trial court certified a question.

*Ruling reversed; demurrer overruled.*

*Leftwich & Shaffer,* for plaintiff.
*H. W. B. Mullins* and *L. Fulton,* for defendants.

MILLER, JUDGE:

In this action on the official bond of S. E. May, now deceased, against the sureties on his bond, the trial court sustained defendants' demurrer to the declaration and, upon its own motion, certified to this court the questions arising on said demurrer.

The declaration, in substance, alleges that the said S. E. May was regularly appointed a constable for Crook District

in Boone County by the county court of said county, to fill a
vacancy in said office, and thereupon appeared before said
court, took the oath of office, and entered into a bond in the
penalty of $3,500.00, conditioned that he would truly and
faithfully perform all the duties required by law as such
constable, and account for and pay over as required by law,
all moneys which might come into his hands; that after
taking such oath and executing said bond, the said May
entered upon the duties of his office and continued to act as
such constable until the date of his death; and that while
acting as such officer, said May carried about his person a
revolver or pistol, by the unlawful and careless use of which
he shot and killed plaintiff's intestate; by reason of which
the plaintiff is entitled to recover from the defendants the
amount named in the bond sued on.

The statute, section 7 of chapter 148, Barnes' Code 1923,
in force at the time the act complained of in the declaration
was committed, made it a misdemeanor for the first offense,
and a felony for the second offense, for any person, without a
state license therefor, to carry about his person any revolver
or other pistol, and provided that any person licensed to carry
any of the weapons mentioned in the section, should file with
the clerk of the circuit court a bond in the penalty of
$3,500.00, with good security, conditioned that he would not
carry such weapons except in accordance with his applica-
tion and as authorized by the circuit court, and that he would
pay all costs and damages accruing to any one by the acciden-
tal discharge or improper, negligent or illegal discharge or
use thereof. That statute further provided, "that nothing
herein contained shall be so construed as to prohibit regularly
elected sheriffs, their regularly appointed deputies, who collect
taxes in each county, and all regularly elected constables in
their respective counties and districts, and all regularly
appointed police officers of their respective cities, towns and
villages, from carrying such weapons as they are now author-
ized by law to carry, who shall have given bond in the penalty
of not less than thirty-five hundred dollars, conditioned for
the faithful performance of their respective duties, which

said officers shall be liable upon their said official bond, for the damages done by the unlawful or careless use of any such weapon, whether such bond is so conditioned or not.''

The order of the trial court certifying the question on which a ruling is desired, recites that the demurrer was sustained on the ground that the declaration on its face shows that Constable S. E. May was not a ''regularly elected'' constable, but an ''appointed'' constable, and was, therefore, not authorized by section 7 of chapter 148 to carry a pistol by giving such a bond as was executed by him.

The office of constable is an elective one; but section 9 of chapter 4 of the Code, provides that vacancies in the office of constable shall be filled by the county court of the county until the next general election. The bond in question here was evidently worded in conformity with section 6 of chapter 10 of the Code, which provides: ''When a person undertaking any office is required by law to give an official bond, the condition, unless otherwise provided, shall be for a faithful discharge by him of the duties of his office, and for accounting for and paying over, as required by law, all moneys that may come to his hands by virtue of said office.'' Section 14 of chapter 10 of the Code requires every constable to give bond in the penalty of not less than two thousand nor more than ten thousand dollars.

No defect in the declaration other than that given by the trial court for sustaining the demurrer is assigned on the hearing here, and we perceive none. So that, the question presented is whether the legislature, by the term ''regularly elected'' in the statute, meant to except from the proviso above quoted all constables not elected by popular vote at a general election held for that purpose, as provided by law.

There can be no question that May was regularly and lawfully inducted into the office of constable in the manner provided by the statute, and that his powers and duties were the same as those of constables elected at a regular election by vote of the qualified voters of the magisterial district in which he was selected to serve. His bond was given in the same manner and conditioned as are the bonds of all other officers

required to give bond, the bond mentioned in the proviso of section 7 of chapter 148, and made thereby to cover damages done by the unlawful and careless use of pistols when carried by the officers therein excepted from the general provision prohibiting the carrying of weapons without a state license. In what different relation, then, does a constable appointed by the county court stand to the State and its citizens for whose protection his bond is given and to the sureties on the bond? There can be none in so far as the bond is conditioned on the faithful performance of the duties pertaining to his office.

The defendants contend that by the use of the term "regularly elected constables," the legislature did not authorize the carrying of weapons by constables "appointed" by the county court to fill vacancies; that the possession of the pistol by May at the time of the injury complained of in the declaration was unlawful; and that, therefore, they are not as sureties liable in damages to plaintiff's intestate. May, as we have seen, was a regularly constituted constable, and had given bond as prescribed by law; and unless the word "elected" used in the statute is to be so construed as not to include constables selected by the county court to fill vacancies among the other officers thereby authorized to carry weapons, his bond would render his sureties liable for his unlawful use of such weapon.

Then, can we assume that the legislature by the use of the word "elected" in the proviso of section 7, did not intend the latter clause of that proviso to include constables selected to fill vacancies in the manner provided by law, who have given bond as required by sections 6 and 14 of chapter 10? We cannot perceive why any distinction should be made, or that the legislature in this case intended any. The evident intent of the statute was to prohibit the carrying of pistols by any person not having a good reason to do so, and to protect the public, by the bond or bonds mentioned, from the unlawful use of such weapons by those who are authorized to carry them. The proviso in question was enacted for the benefit of the public, as well as the statute of which it is a part. The legislature recognized the necessity of the proper use of defen-

sive weapons by certain executive officers, and excepted them from the prohibition against carrying such weapons without first obtaining a license therefor, but again protected the public by declaring that the officers named should be liable on their official bonds to any one injured by the unlawful use of such weapons. It is just as necessary that a constable filling a vacancy be authorized to carry weapons, as one elected by popular vote at a regular election.

As we view it the manifest purpose of the statute under consideration was *pro bono publico;* to protect the public from the improper and unlawful use of dangerous weapons. To accomplish this purpose the legislature deemed it necessary to prohibit the carrying of such weapons by all persons except those showing good cause therefor, and those public officers charged with the execution of the law and the preservation of the peace. The former class are required to obtain a license and give bond; while the latter class are not required to obtain a license nor to execute a special bond, but may carry weapons by virtue of their office when they have given official bonds in the penalty of the bonds required of licensees. The officer in this case naturally falls within the latter case. He was an officer of the law, charged with all the duties and having all the powers of other constables concededly authorized to carry pistols without a license or special pistol bond.

"The intention of the legislature and the object aimed at, being the fundamental inquiry in judicial construction, are to control the literal interpretation of particular language capable of more than one meaning is to be taken in that sense which will harmonize with such intention and object, and effect the purpose of the enactment.". 26 Am. & Eng. Enc. Law, 602, and numerous cases cited; 25 R. C. L. 988; 2 Lewis' Sutherland on Statutory Construction, (2nd ed.), § 490. If we can consider the word "elected" in its broader sense, and are not confined to the narrow definition contended for by the defendants, that it necessarily means selected by vote of the people, the rule above stated is undoubtedly applicable in this case.

The word "elect" as defined by the dictionaries in common use and recognized as authorities, means: "To pick out or choose; to select from among a number; to select for an office or employment by a majority of votes." See the several definitions in Webster's, the Standard, and the Century dictionaries; and 3 Words & Phrases, 2330-2332. And a number of the adjudicated cases have so defined the same word, and applied it in cases involving the selection of public officers by bodies authorized by law to do so. In *Reid* v. *Gorsuch,* 67 N. J. L., after discussing the relative meaning of the words "elect" and "appoint" as defined by the lexicographers, the court says that under these definitions the distinction seems to be that election signifies the act of choosing, and that appointment relates to the *bestowal* of the office upon the person selected, whether the choosing be the act of one or many; that where the power of making an appointment resides in a numerous body, the exercise of the power necessitates a previous agreement, by a majority of voices or otherwise, with respect to the person chosen, and the choice so made is an election; that while under our system of government the most familiar example of "election" is that which is participated in by the people at large, at the same time it requires the use of the phrase "popular election", or "election by the people", to clearly express the thought. Here May was chosen by a body not given power generally to appoint constables, but was selected by it to fill a vacancy, after which he was required to qualify in the manner prescribed for all constables: the county court did not *bestow* upon him the office, it only selected him for the office, as the voters had selected his predecessor. And a careful examination of our statutes discloses the fact that the word "appoint" is used where the exclusive power and authority and power is given to one person or officer, or body, to name persons to hold certain offices; and the terms "fill" and "shall be filled by" are used in cases of vacancies in office. For other cases defining the words "elect" and "appoint", and construing statutes where they are used, see *Odell* v. *Rihn,* (Cal.), 127 Pac. 802; *McPherson* v. *Blacker,* 146 U. S. 1; *State* v. *Compson,* 34 Ore. 25;

*State* v. *Williams,* 60 Kans. 837; *State* v. *Harrison,* 113 Ind. 434, 3 Am. St. Rep. 663. We are therefore of opinion that the word "elected" as used in the statute under consideration was not limited to election by popular vote of the people at a general or special election.

And, it is to be noted that the bond here involved was in the penalty of $3,500.00, the amount required by the statute to authorize the officers named therein to carry weapons without a license.

The terms "regularly elected" and "regularly appointed" were evidently used to exclude from the proviso deputy sheriffs and special constables, appointed for a particular purpose or for special service, and for whose default or misconduct the sheriffs or justices appointing them are held liable on their own official bonds. See section 11 of chapter 7, and section 31 of chapter 50, of the Code.

In view of the spirit and manifest purpose of the statute under consideration, and the interpretation of the terms used therein as set out above, and supported by the authorities cited, we conclude that a constable selected by the county court to fill a vacancy was authorized by the statute to carry a pistol without obtaining a license therefor, and that his sureties are liable on his official bond for his unlawful or negligent use of such weapon.

The ruling of the circuit court will be reversed, and the demurrer overruled.

*Ruling reversed; demurrer overruled.*