No. 32,986

H. L. TUCKER, J. B. COCKRUM and THE HIGHLAND UTILITIES COMPANY, *Appellants*, v. GRANT RANEY, as Mayor, W. A. GEREKE, A. M. NALL, FORREST WALKER, CEDRIC L. BENNETT and O. A. JOSSERAND, as Councilmen, and ELAM HILTY, as City Clerk, of Johnson City, *Appellees*.

(65 P. 2d 329)

Opinion filed March 6, 1937.

*H. W. Stubbs,* of Ulysses, *R. J. Shetlar* and *Steve W. Church,* both of Johnson, for the appellants.

*Samuel Yaggy,* of Syracuse, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action by taxpayers of Johnson City

to enjoin the city officials from constructing a municipal electric light and power plant, and from selling the bonds therefor. The trial court sustained a demurrer to plaintiffs' evidence. Plaintiffs have appealed, and argue: (1) The validity of the appointment of Forrest Walker, a member of the city council; (2) the construction of section 15-108, General Statutes of 1935; (3) does section 12-801, General Statutes of 1935, authorize the proceedings? (4) do the proceedings meet the requirements of sections 12-842 and 12-843 of the General Statutes of 1935? and (5) does the record show such a waste of public funds as would authorize injunction? We will treat these questions in the order they are presented.

The facts giving rise to the first question are as follows: Johnson City is a city of the third class. Its governing body is a mayor and five councilmen. Ordinarily these officers are elected for two years (G. S. 1935, 15-201). In case a vacancy occurs in the council by reason of resignation, death or removal from the ward of a councilman, "the mayor, by and with the advice and consent of the remaining councilmen," shall appoint someone to fill the vacancy until the next election. Of the five councilmen elected one of them had removed from the city. Thereafter, at a meeting held December 13, 1934, at which the mayor and three councilmen were present, one of them being absent, the minutes show: "The mayor appointed Forrest Walker to the office of councilman made vacant by the removal of L. W. Burchfield, which appointment was approved by the unanimous vote of the council." Appellants argue that because one of the councilmen was not present at the meeting the mayor did not have the approval and consent of *all* of the remaining councilmen, hence, that the appointment was absolutely void, that the appointee never became a member of the council, and had no authority to participate as such in its meetings. The point is not well taken. The statute does not use the word "all." Appellants' reasoning would make it impossible for the mayor to appoint to fill a vacancy if all the remaining councilmen were present and one of them objected. What the statute means is that the remaining councilmen constitute the body which is authorized to approve and consent to the appointment made by the mayor. Here a majority of all the councilmen approved and consented to the appointment. Under our rules for statutory construction (G. S. 1935, 77-201, clause fourth) the appointment was valid in all re-

spects. More than that, this is not a proceeding in quo warranto brought in the name of the state, on the relation of the county attorney or any one else having authority to inquire into the authority of Walker to hold the office of councilman.

The second question is the construction of G. S. 1935, 15-108. This pertains to how ordinances of the city may be passed, and contains this provision: ". . . No ordinance shall be valid unless a majority of all the members elect vote in favor thereof." The ordinance in question was passed at a meeting of the city council of February 6, 1935. It received the favorable vote of three of the councilmen. One of these was Forrest Walker. Appellants contend he was not one of the "members elect" of the city council, inasmuch as he had been appointed to the position by the mayor and his appointment approved and consented to by the remaining councilmen. This point is not well taken. Walker had been appointed to fill a vacancy in the council, and his appointment having been approved and consented to, he was a member of the city council for all purposes, and had all the authority, duties and responsibilities of any other member of the city council. The word "elect" as used in this section of the statute is not limited to those councilmen who had been elected at the city election, but includes all those who had been properly chosen, as provided by statute, as distinct from a majority of those present at the meeting. For example, if there were only three members of the council present at a meeting, that number would constitute a quorum for the transaction of business, but a majority of those, that is, two of them, could not enact an ordinance. The majority has to be of all those who have been selected and qualified for the position.

The ordinary meaning of the word "elect" is "chosen, taken by preference from among two or more; select." (Webster's International Dictionary.) The word "elect" when applied to an office is frequently used in the sense of one chosen, or properly chosen, or chosen as provided by law. (See G. S. 1935, §§ 15-106, 15-204, 15-412; 2 McQuillin, Municipal Corporations, 2d ed., p. 107; Dillon, Municipal Corporations, 5th ed., § 530; State v. Williams, 60 Kan. 837, 841, 58 Pac. 476; People v. Ahearn, 196 N. Y. 221, 89 N. E. 930; Hill v. Rector, 161 Ark. 574, 256 S. W. 848, 849; State v. Doss, 102 W. Va. 162, 134 S. E. 749; Kopczynski v. Schriver, 194 Mich. 553, 161 N. W. 238.)

The next question argued is whether the action taken by the city

in this case is authorized by G. S. 1935, 12-801. This statute authorizes municipalities to purchase or construct works for the purpose of supplying such city and its inhabitants with "electric light." The proposition submitted by the city was whether it should issue bonds in the amount of $20,000 for the purpose of constructing and equipping an "electric light and power plant" to supply the city and its inhabitants with "electric light and power." Appellants correctly argue that the authority of the city in this matter was limited to the authority specifically granted by the statute, or necessarily implied from the authority granted by statute. (*City of Leavenworth v. Rankin*, 2 Kan. 357; *In re Van Tuyl*, 71 Kan. 659, 661, 81 Pac. 181; *State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639.) It is argued that electric power is something entirely distinct from electric light, that to generate electric power, especially in large quantities, as is sometimes done in a large plant, would require an expenditure far beyond any sum the city could pay, or for which it could issue bonds. Of this we are asked to take judicial notice. Whether under this statute a municipality can construct and maintain an electric-light plant which furnishes any power at all has never been passed upon by this court. To the extent the court is required to take judicial notice of any matter in this regard, we take notice that there are many appliances operated by electric power, and with a current ordinarily furnished for electric lights, which are used about the ordinary household and in stores, offices, and elsewhere. It would be going pretty far for us to say that under this statute a city could put in a plant to furnish electric lights, but if the same current which furnishes the light were connected with electric irons, washers, radios, fans, refrigerators, sweepers, and many other appliances now used with such an electric current, that the city would be powerless to supply electricity for such purposes. The discussion on this point, however, is quite academic, for it is conceded that the city has authority, under G. S. 1935, 12-842 and 12-843, to purchase, or construct, and maintain, an electric light and power plant. Neither the proposition submitting the matter to a vote nor the ordinance passed by the city specified under which statute the city was attempting to act. Obviously it was acting under whatever powers it had.

Appellants contend the proceedings had were not in conformity to G. S. 1935, 12-842 and 12-843, and are therefore invalid. These statutes require the vote in favor of the proposition submitted to

be a majority of the qualified electors of the city. Appellants contend in this court that the proposition submitted did not receive such a vote, or at least that it was not shown to have received such a vote. This question is raised in this court for the first time. Counsel for appellants frankly tell us it was not presented to the trial court; therefore, strictly speaking, they are not entitled to be heard in this court on the question. (See cases collected, § 304, Appeal and Error, Hatcher's Digest.) Johnson City does not have a very large population. The proposition submitted to the voters received 170 votes for it and 36 votes against. The minutes of the meeting at which the votes were canvassed showed that a motion was carried which, among other things, recited, "that a majority of the electors had voted in favor of the proposition." The petition in this case alleged, among other things, referring to the canvass of that vote, "that the governing body of said city of Johnson City has duly declared said proposition carried." The answer of the city, among other things, alleged that the vote for the proposition was a majority of all qualified electors of the city. Plaintiffs' reply included a general denial. The point urged by appellants in this court is that the minutes of the meeting of the city council do not show that a census had been taken of the qualified voters of the city, hence do not show how the city arrived at the statement contained in the minutes that the proposition had received a majority of all of the electors. Appellants tell us they are confident that there were enough qualified electors in the city so that 170 was not a majority of them. They concede they offered no evidence on that point. Their contention now is that the burden was upon defendants to prove that a census had been taken, or in what manner the members of the city council ascertained and determined that the favorable vote was a majority of the electors. They cite cases in which it was held that the burden was upon the city to show conditions precedent, which were essential to a valid vote, existed. We have examined these cases and find them not in point, for the reason that the question was raised in the trial court, and in a manner entirely different than as presented here. Much of the argument on this point in this court goes to the question on whom was the burden of proof. We first observe that this is an action brought by plaintiffs to obtain an injunction. Normally they would have the burden of proving all matters necessary to authorize a court to grant an injunction. On this view the burden was upon the plaintiffs. But this is not

important since the question was not raised in the trial court. Indeed, plaintiffs in their petition avoided the necessity of defendants offering any proof on that point by alleging that the city officials, having canvassed the vote, "duly declared the proposition carried." The statute does not require that a census be taken; all it requires is that the vote favorable to the proposition shall be a majority of all the electors. We are not concerned with how the members of the city council ascertained that fact. They could have done it by having a census taken. It is possible in a small community such as this that the members of the council collectively knew every elector in the city. Their minutes indicate that in some way they ascertained the fact that 170 was a majority of all the electors, for they so state. Since plaintiffs had made no issue of that in their pleadings, and since they offered no proof to show that the statement in the minutes was inaccurate, and since in fact they did not raise the point in the court below in any manner, we must hold the point not to be well taken.

Appellants next ask: "Does the record disclose such waste of public funds as will justify injunctive relief?" The trial court had not decreed injunctive relief; hence, we are not required to examine the record to see if the evidence justified it. More accurately, this question should have been stated: "Does the record disclose such a waste of public funds as required the trial court to grant injunctive relief in the exercise of its sound, equitable jurisdiction?" Plaintiffs had alleged it would be a waste of public funds to spend not more than $20,000 for an electric light and power plant. On this point it called two witnesses. The city clerk testified he had attended all the meetings of the city council where the matter was discussed; that the city officials had received a quantity of literature, and had given consideration to the kind of plant they would install; that they planned to spend no more money than the $20,000 for which bonds had been voted, and that they intended to install an efficient system for that sum, or less. The other witness called was an engineer of the state corporation commission, who had many years' experience in construction, operation and valuation of utility plants, including electric plants, both municipally and privately owned. He gave it as his opinion that the minimum cost of an efficient plant in a town of the size of Johnson City would be $27,500; but his evidence disclosed that he had reached that conclusion by estimates, approximations and assumptions which might

not be accurate when it came to installing and equipping the plant. No attempt was made by plaintiffs to show just what defendants were planning to use in the way of equipment, or that it would be a waste of money to do what they were specifically planning to do. Therefore, there is no evidence in this record which required the court to find that defendants were planning to waste government funds, or that would have justified such a finding had it been made.

We find no error in the record. The judgment of the court below is affirmed.